1  Susan Martin (AZ #014226)
2  Jennifer Kroll (AZ #019859)
   Martin & Bonnett, P.L.L.C.
3  4647 N. 32nd Street, Suite 185
   Phoenix, Arizona 85018
4  Telephone: (602) 240-6900
5  smartin@martinbonnett.com
   jkroll@martinbonnett.com
6  *Attorneys for Plaintiff*

7

8

9          **IN THE UNITED STATES DISTRICT COURT**

10              **FOR THE DISTRICT OF ARIZONA**

11

12  Donald Higgins,                        )   CASE NO.:
                        Plaintiff          )
13                                         )   **COMPLAINT**
                                           )
14  v.                                     )
                                           )
15                                         )
                                           )
16  The Lincoln National Life Insurance    )
    Company; Wells Fargo & Company Long    )
17  Term Disability Income Plan;  Wells Fargo )
    & Company,                             )
18                                         )
                        Defendants.        )
19

20          This is an action for disability benefits under the Employee Retirement Income

21  Security Act of 1974, as amended ("ERISA"), 29 USC § 1001 *et seq*. and for violations of

22  ERISA's requirements to provide full and fair review of administrative claims and appeals.

23                  **JURISDICTION AND VENUE**

24          1.      This Court has jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C.

25  §1132(e)(1), and 28 USC § 1331.

26          2.      Venue is proper under ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2) and

27  28 U.S.C. § 1391 as the Plan is administered in this District, the breach took place in this

28  District and Defendants reside and may be found in this District.

**PARTIES**

3.      Plaintiff Donald Higgins at all relevant times was a "participant" in the Wells Fargo & Company Long Term Disability Income Plan ("Plan") within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7).

4.      Defendant Plan is an "employee welfare benefit plan" and an "employee benefit plan" within the meaning of ERISA Sections 3(1), (3), 29 U.S.C. §§ 1002(1), (3) providing disability benefits to eligible employees of Wells Fargo & Company ("Wells Fargo").

5.      Defendant Lincoln National Life Insurance Company is the claims administrator that made the determination to terminate Plaintiff's benefits and deny his appeal and is a "fiduciary" with respect to the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

6.      Defendant Wells Fargo is the Sponsor of the Plan and upon information and belief, is the Plan Administrator of the Plan within the meaning of ERISA Sections 3(16)(A) and 3(16)(B) of ERISA, 29 U.S.C. §§ 1002(16)(a) and 1002(16)(B) and is a fiduciary with respect to the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. §1002(21)(A).

**GENERAL ALLEGATIONS**

7.      For approximately ten years prior to his disability, Mr. Higgins was a full-time Project Management Manager 3 for Wells Fargo.

8.      As a Project Management Manager 3, Mr. Higgins' primary job responsibility was to undertake and oversee large technical projects for Wells Fargo.

9.      As a Project Management Manager 3, Mr. Higgins' responsibilities also included high level technical and management duties for Wells Fargo requiring considerable mental acuity and stamina and the ability to undertake and manage projects around the world.

10.      As stated in Wells Fargo's job description , Mr. Higgins' job responsibilities as a Project Management Manager 3 for Wells Fargo also included, *inter alia*, responsibility

for "managing all activities and people associated with complex projects across a line of business" and "managing a program or series of projects associated with a specific business strategy to obtain benefits and controls; the requirement to interact with senior leadership and major stakeholders to establish strategic plans and objectives for programs or projects."

11.    Mr. Higgin's job duties as a Project Management Manager 3 for Wells Fargo included, among other things, the following: the ability to understand and perform highly technical functions; the ability to perform under stress; the ability to accept responsibility for control, direction and planning of activities; the ability to perform a variety of duties and transition from one to another without loss of efficiency; the ability to make generalizations, judgments or decisions based on both subjective and objective criteria, and the ability to manage projects and lead global teams of employees.

12.    As an employee of Wells Fargo, Mr. Higgins participated in the Plan.

13.    The Plan provides that a participant is disabled and entitled to benefits under the Plan if he satisfies the following definition of disability:

> **"Disability" or "Disabled"** means:
>
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

14.    "Material and Substantial Duties" is defined under the Plan as follows:

> **"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

15.  The term "Own Occupation" is defined under the Plan as follows:

> "**Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the local economy.

16.     Mr. Higgins suffers from multiple illnesses including coronary artery disease, ischemic cardiomyopathy, chest pain, shortness of breath, dizziness, chronic pain syndrome, chronic post-thoracotomy pain, and Complex Regional Pain Syndrome.

17.     Throughout the years, Mr. Higgins' symptoms, combined with the serious and powerful medications he must take and the side effects of those medications, have taken a toll on his stamina, his cognitive abilities and his body, and as a result he has been rendered permanently and significantly disabled and is unable to perform the duties of his own occupation or any other occupation.

18.     In Mr. Higgins' medical records, which were provided to the claims administrator, Mr. Higgins' cardiologist noted in October 2021 that Mr. Higgins "is getting more mentally and physical tired from the years of chronic pain symptoms."

19.     Mr. Higgins' ejection fraction, a measure of cardiac function, demonstrated declining cardiac function and fell well below the normal range for a healthy heart, indicating increased evidence of heart failure.

20.     Mr. Higgins' treating cardiologist advised the claims administrator on multiple occasions including when Mr. Higgins applied for benefits and during the claims and appeal process that Mr. Higgins was disabled and unable to perform the material duties of his occupation.

21.     During the claims and appeals process, Mr. Higgins' treating pain management physician advised the claims administrator that Mr. Higgins' pain has been difficult to control and in addition he has had increasing pain in places where he had previous surgery.

22.     Mr. Higgins treating pain management physician also advised the claims administrator that Mr. Higgins has tried several conservative therapies to manage his pain but the only treatment that has been somewhat successful in controlling Mr. Higgins' pain is high dose opiate therapy which causes numerous side effects, including, *inter alia*, extreme fatigue, cognitive clouding, short term memory loss, abdominal pain, chronic constipation, diarrhea, nausea, gastroesophageal reflux, headaches, dry mouth, and nasal

1  congestion.

2  23.    Mr. Higgins' cardiac condition and chronic and severe pain render him

3  disabled and unable to perform the material and substantial duties of a Project Management

4  Manager 3 and due to his disability, Mr. Higgins ceased working on or about November 13,

5  2021.

6  24.    The claims administrator approved Mr. Higgins short term disability benefits,

7  finding Mr. Higgins had a "notable cardiac surgical history with uncontrolled chest pain"

8  and that his restrictions and limitations were "less than sedentary."

9  25.    From in or around November 13, 2021 through on or about May 13, 2022

10  Mr. Higgins received short term disability benefits.

11  26.    While he was on short-term disability benefits, Mr. Higgins applied for long

12  term disability benefits.

13  27.    On or about April 12, 2022, Mr. Higgins submitted his completed application

14  for long term disability benefits to the claims administrator.

15  28.    By letter dated May 17, 2022, the claims administrator denied Mr. Higgins'

16  claim for long term disability benefits.

17  29.    Without reviewing the actual requirements of Mr. Higgins' occupation, the

18  May 17, 2022 denial asserted that although Mr. Higgins did have cardiac restrictions, and

19  despite the mental demands of Mr. Higgins occupation or the combination of Mr. Higgins'

20  cardiac and other medical conditions, that he could perform the physical demands of a

21  sedentary job.

22  30.    Neither the May 17, 2022 denial of Mr. Higgins' benefits nor the information

23  provided with Mr. Higgins' application for those benefits  provided  any specificity with

24  respect to  any additional examination or evaluation or other specific information  that was

25  required to perfect Mr. Higgins' appeal .

26  31.    The May 17, 2022 letter denying Mr. Higgins' claim stated that he needed to

27  provide the following documentation:

28      all office visit notes, treatment plans, procedure notes and test results from all

5

treating providers including but not limited to Dr. Curletta, Dr. Cho and Dr. Zweig from November 13, 2021 through the point of your appeal not previously provided; physician documentation to support the specific restrictions and limitations given by your providers, including an explanation of how they preclude you from performing the substantial and material duties of your own occupation; as well as any additional information which you feel will support your claim. The medical documentation should clearly show impairment from a physical illness that preclude you from performing the duties of any occupation with respect to medically supported restrictions and limitations.

32.    In accordance with the instructions given to him in the letter terminating his benefits, Mr. Higgins, through his attorney, timely appealed the termination of his benefits by letter dated November 3, 2022 and further timely supplemented his appeal in accordance with the claims' administrator's invitation to do so by letter dated February 3, 2023.

33.    In support of his appeal, Mr. Higgins submitted the documents and information that the claims administrator stated must be provided along with other voluminous documentation and evidence that he was disabled within the meaning of the Plan, including, *inter alia*, a multitude of medical records, the results of a functional capacity exam that found Mr. Higgins was disabled and letters from his treating physicians demonstrating that he could not perform the jobs of a Project Management Manager 3.

34.    During the pendency of Mr. Higgins' appeal, the claims administrator's reviewing physicians were directed to call Mr. Higgins' physicians in order to discuss Mr. Higgins' medical conditions.

35.    In response to voicemail messages, Mr. Higgins' physicians attempted to return phone calls and sent facsimiles to the claims administrator advising the claims administrator that they had attempted to reach the claims administrator's reviewers without any response;  however, the claims administrator's reviewers remained unavailable did not return Mr. Higgins' physicians' phone calls prior to the denial of Mr. Higgins' appeal.

36.    During the pendency of Mr. Higgins' appeal and before his appeal was denied, Mr. Higgins' attorney also contacted the claims administrator to advise the claims administrator that Mr. Higgins' physicians were willing to speak to the claims

1  administrators' reviewers and offered to help set up calls and/or meetings with Mr. Higgins'

2  physicians and even though the claims administrator had directed its reviewers to speak to

3  Mr. Higgins' treating physicians, the claims administrator stated that counsel's assistance

4  in this regard was unnecessary.

5        37.    By letter dated February 15, 2023, the claims administrator denied Mr.

6  Higgins' appeal without speaking to Mr. Higgins' treating physicians, stating, *inter alia*,

7  contrary to its earlier determination that Mr. Higgins had cardiac restrictions, that Mr.

8  Higgins had no cardiac restrictions, and that the claims administrator's physician reviewer

9  had determined that based on Mr. Higgins' functional capacity exam which was submitted

10  in support of Mr. Higgins' appeal, Mr. Higgins was disabled but only from the date of the

11  functional capacity examination forward and therefore, since he was not working nor

12  disabled while an active participant in the Plan he was not eligible for any benefits.

13        38.    At no time prior to the February 15, 2023 denial of Mr. Higgins appeal did

14  the claims administrator even inform Mr. Higgins that he needed a functional capacity

15  examination in order to confirm his disability.

16        39.    Had the claims administrator instructed or suggested that Mr. Higgins was

17  required to obtain a functional capacity examination on the date of his disability in order to

18  obtain disability benefits from the date of his disability, Mr. Higgins would have obtained

19  one.

20        40.    The claims administrator based its determination to deny Mr. Higgins' claim

21  and appeal based on a paper review of records, where none of the individuals reviewing Mr.

22  Higgins' appeal ever personally examined Mr. Higgins nor did they even speak to Mr.

23  Higgins' treating physicians despite the physicians attempts to speak to the reviewers.

24        41.    During the claims and appeals process, the claims administrator did not

25  consider all of the actual job duties of Mr. Higgins' occupation as required under the Plan,

26  instead focusing solely on Mr. Higgins' physical ability to perform a sedentary job without

27  considering the multiple, high level job responsibilities entailed in his occupation.

28        42.    The claims administrator did not consider the combined effect of Mr.

Higgins' multiple medical issues in considering whether Mr. Higgins was disabled, nor did it consider the side effects of the powerful medications Mr. Higgins must take.

43.     The claims administrator did not attempt to evaluate or reconcile the inconsistencies of its own cardiologist reviewers, one of whom claimed Mr. Higgins had cardiac restrictions and one of whom claimed that Mr. Higgins had no such restrictions nor did the claims administrator attempt to reconcile either of those two opinions with Mr. Higgins' cardiologist who advised the claims administrator that Mr. Higgins was unable to perform his occupation.

44.     The claims administrator ignored the substantial evidence establishing that Mr. Higgins is disabled within the meaning of the Plan.

45.     Mr. Higgins has fully exhausted any required administrative remedies.

46.     By letter dated February 16, 2023, Mr. Higgins requested the claims administrator provide, *inter alia*, the following documents and information:

a.  A complete copy of Mr. Higgins' claim and appeal file;

b.  Complete copies of all documents relied upon in deciding Mr. Higgins' claim and appeal including, without limitation, all notes, logs and documents of any medical professional, Claims Manager, Nurse Case Manager and Medical Director who reviewed Mr. Higgins' claim and/or appeal;

c.  Complete copies of all documents, records or other information submitted, considered or generated in the course of making the determination to deny Mr. Higgins' claim and appeal without regard to whether such document, record or other information was relied upon in making the adverse benefit determinations, including, without limitation, all medical records received and reviewed, all case notes, all external and internal communications, including electronic communications, facsimiles, notes of such conversations, logs, or transcripts and recordings of any conversations regarding Mr. Higgins' claim and/or appeal;

d.  Any and all internal rules, guidelines, protocols, standards or other similar criteria that were relied upon, referenced, or otherwise utilized in in rendering the claim and/or appeal determinations;

e.  Complete copies of all documents and information containing administrative processes and safeguards for ensuring consistent

1

2

3

> decision-making and all documents and information that demonstrate compliance with administrative processes and safeguards for ensuring consistent decision-making with respect to Mr. Higgins' claim and/or appeal and/or diagnoses;

4

5

6

7

47.    By letter dated February 16, 2023 and email dated February 17, 2023, the claims administrator sent an electronic file that failed to include many of the requested documents including, *inter alia*, communications between the medical reviewer and the claims administrator exchanging documents and information.

8

9

10

11

48.    The claims administrator's February 16, 2023 letter also asserted that there were no internal rules, guidelines, protocols, standards or other similar criteria relied upon in rendering the claim determination and that the claim was only evaluated based on the file and the provisions of the policy.

12

13

14

49.    Counsel for Plaintiff followed up with the claims administrator by letter dated March 24, 2023 reiterating Mr. Higgins' request for the documents and information previously requested but not provided.

15

16

17

18

19

50.    By letter dated March 27, 2023, the claims administrator responded and once again failed to provide all of the communications and documents sent to and/or received from the medical reviewers and asserted that that the communications between the medical provider and the claims administrator "would have included all medical records in the file" but failed to provide those communications as requested.

20

21

22

## COUNT I
### (TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1(B)), 29 U.S.C. §1132 (a)(1)(B)

23

24

51.    Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), Civil Enforcement, provides in relevant part:

25

    a) Persons empowered to bring a civil action

26

    A civil action may be brought—

27

28

    (1) By a participant beneficiary--…
    (B) to recover benefits due to him under the terms of his plan, to enforce

1  
2  

his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

3  

52.    By the acts and omissions set forth above, including by denying Plaintiff's

4  

long term disability benefits, Defendants violated the terms of the Plan.

5  

53.    As a proximate result of Defendants' violations of the terms of the Plan,

6  

Plaintiff was harmed and deprived of benefits due under the terms of the Plan.

7  

54.    As a result of Defendants' violation of the terms of the Plan and pursuant to

8  

ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to an order

9  

declaring Defendants violated the terms of the Plan, enjoining Defendants from violating

10  

the terms of the Plan, and directing Defendants to pay Plaintiff's disability benefits

11  

retroactive to May 14, 2022 and to continue to pay Plaintiff's disability benefits so long as

12  

Plaintiff remains disabled, together with prejudgment and post-judgment interest, attorneys'

13  

fees and costs pursuant to ERISA section 502(g), 29 U.S.C.§ 1132(g).

14  

## COUNT II
## (TO REDRESS VIOLATIONS OF ERISA's CLAIMS PROCEDURE REQUIREMENTS)

15  

16  

55.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs

17  

as though full set forth herein.

18  

56.    Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:

19  

In accordance with regulations of Secretary, every employee benefit plan

20  

shall—
(1) provide adequate notice in writing to any participant or

21  

beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial,

22  

written in a manner calculated to be understood by the

23  

participant, and
(2) afford a reasonable opportunity to any participant whose

24  

claim for benefits has been denied for a full and fair review

25  

by the appropriate named fiduciary of the decision denying the claim.

26  

27  

57.    ERISA regulations, 29 C.F.R. § 2560.503-1, provide that plan administrators

28  

must establish and maintain reasonable claims procedures which include, *inter alia*, the

1    following: that the administrator has administrative processes and safeguards designed to

2    ensure and to verify that benefit claim determinations are made in accordance with

3    governing plan documents, that, where appropriate, the plan provisions have been applied

4    consistently with respect to similarly situated claimants, must provide the specific reason

5    or reasons for the adverse benefit determination, a description of any additional material or

6    information necessary for the claimant to perfect the claim and an explanation of why such

7    material or information is necessary and must provide that documents that are relevant to a

8    claim, including documents that are generated, considered, or reviewed, are provided upon

9    written request.

10        58.    ERISA Section 502(a)(3), 29 U.S.C.§ 1132(a)(3), Civil Enforcement,

11    provides in relevant part:

12

13        Persons empowered to bring a civil action
       A civil action may be brought--…

14        (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or
       practice which violates any provision of this subchapter or the terms of the

15        plan, or (B) to obtain other appropriate equitable relief (i) to redress such
       violations or (ii) to enforce any provisions of this subchapter or the terms of

16        the plan;

17

18        59.    By the acts and omissions set forth above, including, but not limited to, failing

19    to establish and maintain reasonable claims and appeals procedure including, *inter alia*,

20    failing to have and follow administrative processes and safeguards designed to ensure and

21    to verify that benefit claim determinations are made in accordance with governing plan

22    documents, that, where appropriate, the plan provisions have been applied consistently with

23    respect to similarly situated claimants, failing to  provide the specific reason or reasons for

24    the adverse benefit determination, failing to provide a description of any additional material

25    or information necessary for Plaintiff to perfect the claim and an explanation of why such

26    material or information is necessary and failing to ensure that documents that are relevant

27    to a claim, including documents that are generated, considered, or reviewed, are provided

28    upon written request, Defendants violated ERISA's claims procedure requirements.

11

60.    As a result of Defendants' acts and omissions set forth above, Plaintiff has been harmed and his rights to benefits and to pursue his claims were chilled, delayed, and thwarted.

61.    Plaintiff is entitled to appropriate declaratory, injunctive and equitable relief pursuant to ERISA Section 502(a)(3), 28 U.S.C. §1132(a)(3), including, but not limited to, an order that Defendants failed to maintain proper claims procedures in violation of ERISA Section 503, 29 U.S.C. § 1133 and regulations thereunder and that Defendants are not entitled to any deference to the extent any deference would otherwise apply to Plaintiff's claim and appeals denial and enjoining Defendants to establish and follow reasonable claims procedures that comply with ERISA's requirements and awarding Plaintiff such other legal and equitable relief as the Court deems just and proper together with Plaintiff's attorneys fees and costs pursuant to ERISA Section 502(g), 29 U.S.C.§ 1132(g).

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally:

A.   Declaring that Defendants violated ERISA, applicable regulations and the terms of the Plan and that Plaintiff is entitled to long term disability benefits retroactive to May 14, 2022, together with prejudgment interest and other appropriate make whole relief;

B.   Declaring that Defendants violated ERISA Section 503, 29 U.S.C. § 1133 and claims regulations thereunder;

C.   Enjoining Defendants to pay Plaintiff's benefits retroactive to May 14, 2022 and to continue to pay such benefits so long as Plaintiff remains disabled under the terms of the Plan;

D.   Enjoining Defendants from violating the terms of the Plan and ERISA's claims procedure requirements and directing Defendants to establish and follow reasonable claims and appeals procedures;

E.   Awarding Plaintiff prejudgment interest and directing the payment of post-judgment interest to account for any delay in payment to Plaintiff following entry

12

1   of judgment;

2   F.  Awarding Plaintiff reasonable attorneys' fees and costs pursuant to Section

3       502(g) of ERISA, 29 USC §1132(g);

4   G.  Awarding such other and further relief as the Court deems just and proper.

5   Dated this 10th day of  August 2023.

6

7                                MARTIN & BONNETT, P.L.L.C.

8

9                                By: s/Jennifer Kroll
                                     Susan Martin
                                     Jennifer Kroll
10                                   4647 N. 32nd Street, Suite 185
                                     Phoenix, AZ  85018
11                                   (602) 240-6900

12
                                     *Attorneys for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28